## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ELIZABETH HOFFMAN,

              Plaintiff,

    v.

GENPACT,

              Defendant.

CIVIL ACTION NO. 3:22-CV-00009

(MEHALCHICK, M.J.)

## <u>MEMORANDUM</u>

Presently before the Court is a motion to compel arbitration filed by Defendant Genpact on June 28, 2022. (Doc. 33; Doc. 34). *Pro se* Plaintiff Elizabeth Hoffman ("Hoffman") initiated the above-captioned actions by filing two complaints against Genpact asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). (Doc. 1); *Hoffman v. Genpact*, No. 3:22-CV-00154 (M.D. Pa. Jan. 28, 2022), ECF No. 1. On February 25, 2022, upon the parties' concurrence, the Court consolidated the above-captioned actions into this civil action. (Doc. 13; Doc. 14). On March 31, 2022, the parties consented to proceed before the undersigned United State Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 23). For the following reasons, Genpact's motion shall be GRANTED. (Doc. 34).

I.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>

On October 8, 2018, Hoffman began employment for Genpact, a global professional services firm, as a payroll specialist. (Doc. 1, at 10). On Hoffman's first day of work, she

electronically completed and signed various onboarding documents, policies, procedures, and acknowledgments, including the At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement ("Employment Agreement"), through Genpact's online human resources management system, SilkRoad Technology. (Doc. 1, at 11; Doc. 35, at 7-12). According to her complaint, Hoffman made several ADA accommodation requests to Genpact's human resources department regarding her Central Auditory Processing Disorder ("CAPD"), Mixed Receptive-Expressive Language Disorder ("MERLD"), and Tinnitus. (Doc. 1, at 3-4, 12). However, Hoffman avers that Genpact discriminated against her, mocked and ridiculed her, and subjected her to a hostile work environment. (Doc. 1, at 3-5). In addition, Hoffman's complaint alleges that Genpact unlawfully released her private medical information, excluded her from training and work tasks for seven months, and excluded her from pay increases and bonuses that other non-disabled staff was provided. (Doc. 1, at 3). On September 11, 2020, Hoffman's employment for Genpact was terminated for "low quality scores." (Doc. 1, at 28).

On January 2, 2022, Hoffman commenced civil action No. 3:22-CV-00154 by filing a complaint against Genpact in the Court of Common Pleas of Luzerne County, Pennsylvania, which Genpact removed to the United States District Court for the Middle District of Pennsylvania on January 28, 2022, pursuant to 28 U.S.C. § 1331. *Hoffman v. Genpact*, No. 3:22-CV-00154 (M.D. Pa. Jan. 2, 2022). On January 3, 2022, Hoffman commenced civil action No. 3:22-CV-00009 by filing a complaint against Genpact in the Middle District, along with the motion to seal the case. (Doc. 1; Doc. 2). In both complaints, Hoffman alleges claims of discrimination, retaliation, and harassment based on her disability and national origin under Title VII, ADA, FMLA, and PHRA. (Doc. 1, at 6); *Hoffman v. Genpact*, No. 3:22-CV-

00154 (M.D. Pa. Jan. 2, 2022), ECF No. 1, at 3.

On February 4, 2022, Genpact filed a motion to compel arbitration. (Doc. 7). On February 18, 2022, Hoffman filed a brief in opposition to the motion, which argued that the agreement is unenforceable based on procedural and substantive unconscionability. (Doc. 10, at 2). On the same day, Genpact filed a brief in support of the motion to compel, attaching an arbitration agreement signed by Hoffman and arguing that the agreement requires her to resolve her claims through binding arbitration. (Doc. 16, at 11-12; Doc. 16-1, at 22). On February 25, 2022, the Court consolidated the two actions under civil action No. 3:22-CV-00009, and unsealed the case record. (Doc. 13; Doc. 14). On March 14, 2022, the Court denied Genpact's motion to compel arbitration without prejudice and granted the parties thirty days to conduct limited discovery on the issue of whether Hoffman's claims are governed by a valid arbitration agreement. (Doc. 19; Doc. 20).

Hoffman filed the first motion for extension of time to complete discovery on March 22, 2022, which the Court granted on April 4, 2022. (Doc. 21; Doc. 24). Hoffman filed the second motion for extension of time to complete discovery on April 13, 2022, which the Court granted on April 26, 2022. (Doc. 27; Doc. 29). Hoffman filed the third motion for extension of time to complete discovery on May 27, 2022, which the Court granted in part and denied in part on June 3, 2022, stating that discovery was due by June 28, 2022, and that "[n]o further extensions of time will be permitted." (Doc. 30; Doc. 32). On June 17, 2022, Hoffman filed the fourth motion for extension of time to complete discovery.[1] (Doc. 33).

---

[1] In her motion for extension of time, Hoffman asserts that she "ha[s] been having some difficulty with obtaining directly related documents for the Limited discovery process regarding [ ] the formation of the Arbitration Agreement." (Doc. 33, at 1). Specifically, Hoffman states that she is having difficulty obtaining correspondences that are directly related to the limited discovery issued, including "being denied to print out documents and

On June 28, 2022, Genpact filed a renewed motion to compel arbitration, as well as a brief in support and a statement of facts. (Doc. 34; Doc. 35; Doc. 36). Hoffman filed a brief in opposition to the motion and supplemental exhibits on June 28, 2022, and July 5, 2022, respectively. (Doc 37; Doc. 38). Genpact filed a reply brief on July 12, 2022. (Doc. 39). The motion to compel arbitration has been fully briefed and is ripe for review. (Doc. 34; Doc. 35; Doc. 36; Doc. 37; Doc. 38; Doc. 39).[2]

A. ARBITRATION AND EQUITABLE RELIEF PROVISION OF THE EMPLOYMENT AGREEMENT

In the brief in support of the motion to compel, Genpact append a document that purports to be the Employment Agreement that was signed by Hoffman. (Doc. 35-5, at 2). In relevant part, paragraph 11 of the Employment Agreement, the arbitration provision, provides in all capital letters that:

> In consideration of my employment with the company, . . . I agree that any and all controversies, claims, or disputes that I may have with anyone (including the company and any employee . . .), arising out of, relating to, or resulting from my employment or relationship with the company or the termination of my employment or relationship with the company, including any breach of this agreement, shall be subject to binding arbitration under the Federal Arbitration Act . . . . I agree to arbitrate any and all common law and/or statutory claims . . . including, but not limited to, claims under [Title VII], the [ADA] . . . the [FMLA], . . . and claims of harassment, discrimination, [and] wrongful termination . . . . With respect to all such claims and disputes that I agree to

---

agreements on the day of hire which are directly related all the continued requests that went on for the next 4+ months later." (Doc. 33, at 3). However, as discussed *infra*, the Court finds that there is no dispute of material fact that the Employment Agreement is a valid and enforceable contract, the arbitration agreement is not unconscionable, and that Hoffman's claims are within the scope of the arbitration agreement. Therefore, the Court shall grant Genpact's motion to compel arbitration and stay judicial proceedings. (Doc. 35). Accordingly, Hoffman's fourth motion for extension of time is **DENIED AS MOOT**. (Doc. 33).

[2] Hoffman has also filed two motions for leave to file sur-reply briefs in support of her opposition to the motion. The Court finds that there is no basis for the filing of a sur-reply brief, and as such, those motions (Doc. 42; Doc. 51) are **DENIED**.

arbitrate, I hereby expressly agree to waive, and do waive, any right to a trial by jury.

(Doc. 35-5, at 26-27).

Furthermore, the arbitration agreement expressly state that those provisions are governed by the Federal Arbitration Act ("FAA"), and that the Judicial Arbitration and Mediation Services, Inc. ("JAMS") Employment Arbitration Rules & Procedures govern the arbitration process and provides a link to those rules. (Doc. 35-5, at 27). The arbitration agreement also contains a provision regarding the voluntary nature of the agreement, which states, in all capital letters, that:

> I acknowledge and agree that I am executing this agreement voluntarily and without any duress or undue influence by the company or anyone else. I further acknowledge and agree that I have carefully read this agreement and that I have asked any questions needed for me to understand the terms, consequences, and binding effect of this agreement and fully understand it, including that *I am waiving my right to a jury trial*. Finally, I agree that I have been provided an opportunity to seek the advice of an attorney of my choice before signing the agreement.

(Doc. 35-5, at 28) (emphasis in original).

## II. STANDARD OF REVIEW

### A. MOTION TO COMPEL ARBITRATION

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). The FAA provides the "body of federal substantive law establishing . . . the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Section 2 of the FAA states that "[a] written provision in . . .

a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 requires courts, upon motion, to stay litigation "upon being satisfied that" the issues involved are "referable to arbitration" under a written arbitration agreement. 9 U.S.C. § 3. The stay shall remain in effect until the arbitration, in accordance with the arbitration agreement, concludes. *See* 9 U.S.C. § 3. Furthermore, under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written [arbitration] agreement . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The Supreme Court has construed the FAA as establishing a nationwide policy favoring the resolution of disputes via arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Arbitration agreements may only be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In disposing of a motion to compel arbitration, the court applies the motion to dismiss standard of either Rule 12(b)(6) of the Federal Rules of Civil Procedure, where (1) the existence of an arbitration agreement is apparent from the face of the complaint; (2) the contract containing the pertinent arbitration agreement is attached to the complaint; or (3) the plaintiff does not contest that an enforceable arbitration agreement exists. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (citation omitted). If the

existence of an arbitration agreement is not apparent, the court must order discovery limited to the issue of arbitrability and, in disposing of the motion to compel, must apply "the same standard it applies to a motion for summary judgment." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009); Fed. R. Civ. P. 56. The court applies the summary judgment standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co.*, 584 F.3d at 528. Under this standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff*, 587 F.3d at 620. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Vilches v. Travelers Cos.*, 413 F. App'x 487, 491 (3d Cir. 2011) (internal quotation marks and citation omitted).

In this case, the Court found that the complaint was silent with respect to the existence of an arbitration agreement, that no documents were attached to the complaint, and that the complaint did not expressly reference any documents. (Doc. 19, at 6). Thus, in accordance with *Guidotti*, the court ordered additional, limited discovery focused on the issue of whether a valid agreement to arbitrate was entered into by the parties and whether Hoffman's claims are governed by that agreement. (Doc. 19, at 8). The parties have conducted this discovery and Genpact has filed a renewed motion to compel arbitration. Therefore, the Court applies the summary judgment standard of review to this motion. *See Zirpoli v. Midland Funding LLC*, No. 1:19-CV-01428, 2021 WL 2826720, at *3 (M.D. Pa. July 7, 2021) (applying summary judgment standard of review to renewed motion to compel arbitration after parties completed limited discovery).

B.  MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the

nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[3] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With respect to cross-motions for summary judgment, "[e]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)). However, a federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell,* 206 F.3d at 278.

III.  **DISCUSSION**

In the renewed motion to compel arbitration, Genpact requests that the Court issue an

---

[3] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

Order: (1) "compelling [Hoffman] to arbitrate her claims in accordance with the terms of the enforceable arbitration agreement with [Genpact]; and (2) "staying this action under 9 U.S.C. § 3 until an arbitration is had in accordance with the Court's order to arbitrate." (Doc. 34, at 1). Genpact asserts that Hoffman "is a party to an enforceable agreement to arbitrate whereby she agreed to submit all employment-related disputes with [Genpact] to binding arbitration." (Doc. 34, at 2). In opposition, Hoffman argues that she should not be bound by the arbitration provision in the Employment agreement for multiple reasons, including the "[f]raudulently coercive obtained signature on the Arbitration Agreement by means of fraud on the part of Genpact." (Doc. 37, at 1). As noted *supra*, when deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide*, 555 F. App'x at 154.

First, Hoffman maintains that she was not provided an opportunity to receive a printed copy of the Employment Agreement and Genpact failed to provide an explanation of the Employment Agreement. (Doc 37, at 2). Hoffman also asserts that she was not informed that she could log into the electronic signing system at any time to print a document and that she was not given the time or resources to obtain the web link to view the policies, agreements, and modules contained within the Employment Agreement. (Doc. 37, at 6). Second, Hoffman avers that Genpact used coercive tactics, such as keeping the lights in the onboarding room "mostly off," and telling the participants they could not leave the conference room until everything was completed. (Doc. 37, at 6). Next, Hoffman contends that the Employment Agreement is procedurally and substantively unconscionable. (Doc. 37, at 7-11).

A. A VALID CONTRACT EXISTS.

Applying basic principles of Pennsylvania contract law, the Court finds that the Employment Agreement, which includes the arbitration provision, is a valid, enforceable contract. Arbitration is a matter of contract, and a party cannot be forced to arbitrate "unless that party has entered an agreement to do so." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993); *see also Century Indem. Co.*, 584 F.3d at 524. Thus, before compelling arbitration, a court must determine (1) "that a valid agreement to arbitrate exists between the parties." *Pritzker*, 7 F.3d at 1114. "Because arbitration is a matter of contact," "[t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160. Under Pennsylvania law, a valid contract requires: (1) a mutual manifestation of intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). "In the employment context, arbitration agreements will be upheld when they are 'specific enough (i.e. unambiguous) to cover the employee's claims' and 'the employee has *expressly* agreed to abide by the terms of [the] agreement.' " *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160-61 (3d Cir. 2009) (quoting *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 285 (Pa. Super. 2005)).

In this instance, the mutual intent to be bound by the agreement to use JAMS for dispute resolution is evident in the fact that Hoffman read and electronically signed the Employment Agreement on October 8, 2018. (Doc. 35-5, at 30). In Pennsylvania, as in most jurisdictions, a signature on a contract is evidence of legal assent. *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) ("Acceptance is not measured by the parties' subjective intent, but rather by their

outward expressions of assent."). Importantly, Pennsylvania recognizes e-signatures "as a valid means to register legal assent." *Dicent*, 758 F. App'x at 313; *see also* 73 P.S. § 2260.305 ("An electronic record or electronic signature is attributable to a person if it was the act of a person. The act of a person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."). Furthermore, it is well-settled that an employer has "no obligation to ensure [an employee] digested the contract terms, consulted with counsel or had time to deliberate or negotiate. An employer may offer a contract to a prospective employee on a take-it or leave-it basis." *Smith v. Creative Res., Inc.*, No. 97-CV-6749, 1998 WL 808605 *1 (E.D. Pa. Nov. 23, 1998) ("A literate adult may not avoid a contractual obligation on the ground that he did not read or understand the terms of the contract.").

Hoffman asserts that she was fraudulently coerced to sign the Employment Agreement. (Doc. 37, at 1). In response, Genpact argues that Hoffman "failed to offer any specific factual allegations, let alone any evidence, that she was tricked or coerced into signing the Employment Agreement." (Doc. 29, at 9). The Court finds that Hoffman was not "by the unlawful act of another, [ ] induced to enter into [a] contractual relationship[ ] under such circumstances as to indicate that [s]he has been deprived of the exercise of free will." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d. Cir. 1985). In *Harsco*, the Third Circuit found that despite the defendant alleging that he was "humiliated, harassed, cursed at and threatened by plaintiff's employees, to force defendant to sign the Employment Agreement against his will . . . [t]he court concluded that [defendant] was not the victim of economic duress because the situation that caused him to fear the loss of his job . . . was of his own making." *Harsco Corp.*, 779 F.2d at 911. The Third Circuit also noted that "[The plaintiff] did not manipulate

[the defendant's] financial circumstances to render him more susceptible to economic pressure." *Harsco Corp.*, 779 F.2d at 911. Similarly, Hoffman has not suggested that Genpact has engaged in such conduct here. *See Mason v. Lowe's Companies, Inc.,* No. CV 19-973, 2020 WL 3574313, at *4 (W.D. Pa. June 30, 2020).

Next, the terms and conditions of the Employment Agreement and arbitration provision are sufficiently definite to establish a binding and enforceable agreement. In Pennsylvania, it is a well-settled legal principle that adequate consideration exists for an agreement attendant to an employment relationship where the agreement was entered into at the inception of the relationship, even where the employment is at-will. *See Rullex Co., LLC v. Tel-Stream, Inc.*, 232 A.3d 620, 627 (Pa. Supreme 2020) ("for a restrictive covenant executed after the first day of employment to be enforceable absent new consideration, the parties must have agreed to its essential provisions as of the beginning of the employment relationship."); *see also Modern Laundry & Dry Cleaning v. Farrer*, 370 Pa.Super. 288, 536 A.2d 409, 411 (Pa. Super. 1988) (discussing consideration and restrictive covenants in employment agreements and stating, "as long as the restrictive covenant is an auxiliary part of the taking of employment and not a later attempt to impose additional restrictions on an unsuspecting employee, a contract of employment containing such a covenant is supported by valid consideration and is therefore enforceable."); *Barb-Lee Mobile Frame Co. v. Hoot*, 206 A.2d 59 (Pa. 1965) (stating that if a noncompetition clause is executed at the inception of the employment, the consideration to support the covenant may be the award of the position itself); *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (Pa. 1957) (holding covenant not to compete may be enforceable if contained in an employment agreement executed upon the taking of employment); *see generally Grant v. Phila. Eagles LLC,*

No. 09-1222, 2009 WL 1846231, at *4 (E.D. Pa. June 24, 2009) (collecting cases that discuss employment as consideration in support of an arbitration agreement).

The Employment Agreement and arbitration provision are clearly supported by consideration. As noted *supra*, the arbitration provision itself clearly states that by accepting employment with Genpact and electronically signing the Employment Agreement, Hoffman both understood the terms of the arbitration agreement and agreed to be bound by them. (Doc. 35-5, at 28). The arbitration provision unambiguously notified Hoffman that her employment with Genpact meant that she agreed "to arbitrate any and all common law and/or statutory claims under local, state, or federal law," and that she waived any right to trial by jury. (Doc. 35-5, at 26-27). The provision provided a web link to the JAMS rules and procedures so that Hoffman may obtain information about the arbitration process. (Doc. 35-5, at 27). The arbitration provision noted that by agreeing to the Employment Agreement, Hoffman acknowledged that she read the agreement and asked any questions needed for her to understand the terms, consequences, and binding effect of the agreement. (Doc. 35-5, at 28).

In this instance, both Genpact and Hoffman agreed to resolve employment-related disputes through the JAMS program. (Doc. 35-5, at 27). The provision states, "I agree that any arbitration will be administered by [JAMS]." (Doc. 35-5, at 27). These mutual promises to submit claims to dispute resolution in and of themselves are sufficient consideration to support the enforceability of the arbitration provision. *See Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-CV-83, 2019 WL 2077731, at *5 (E.D. Pa. May 10, 2019) (finding that consideration was sufficient where plaintiff signed the arbitration agreement as a condition of her employment and arbitration agreement recited parties' mutual exchange of promises to be bound by arbitration). Additional consideration exists in this instance based on the fact

that Hoffman was employed by Genpact after electronically signing the Employment Agreement on October 8, 2018, until her employment was terminated on September 11, 2020. (Doc. 1, at 28). Therefore, the Court finds that the Employment Agreement is supported by adequate consideration as both parties agreed to be mutually bound by arbitration and Hoffman signed the Employment Agreement, which contains the arbitration agreement, as a condition of her employment. *See Asberry-Jones*, 2019 WL 2077731, at *5.

Accordingly, the Court finds that there is no genuine dispute of material fact that the Employment Agreement, which contains the arbitration agreement, is a valid and enforceable contract supported by consideration.

B. THE ARBITRATION PROVISION IS NOT UNCONSCIONABLE.

Hoffman argues that the arbitration agreement is unenforceable because it is substantively and procedurally unconscionable under Pennsylvania law. (Doc. 37, at 7-11). Genpact counters that there is nothing unconscionable about the arbitration agreement. (Doc. 35, at 18-26).

Unconscionability is a "contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (quoting *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145 (Pa. Super. Ct. 1985)). "To prove unconscionability under Pennsylvania law, a party must show that the contract is *both* substantively and procedurally unconscionable." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115 (Pa. 2007)) (emphasis added). This requires the plaintiff show "(1) that the contractual terms are unreasonably favorable to the drafter ('substantive unconscionability'), and (2) that there is no meaningful choice on the part of the other party

- 15 -

regarding the acceptance of the provisions ('procedural unconscionability')." *Cardinal v. Kindred Healthcare Inc.*, 155 A.3d 46, 53 (Pa. Super. 2017) (*citing MacPherson v. Magee Mem. Hosp.*, 128 A.3d 1209, 1219 (Pa. Super. 2015)).

"[T]he Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding scale approach' so that where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required and presumably, vice-versa." *Cardinal*, 155 A.3d at 53. "This 'sliding scale approach' does not, however, eliminate a party's obligation to demonstrate the existence of both procedural and substantive unconscionability." *Caparra v. Maggiano's Inc.*, No. 14-5722, 2015 WL 5144030 *5 (E.D. Pa. Sept. 1, 2015). The burden of proof for unconscionability rests on the party challenging the arbitration agreement. *Salley,* 925 A.2d. at 119-20. If there is a high degree of procedural unconscionability, then "a lesser degree of substantive unconscionability may be required." *Quilloin*, 673 F.3d at 230 (quoting *Salley*, 925 A.2d at 125 n.12). Regardless, a party challenging a contract as unconscionable must prove both prongs—procedural and substantive unconscionability—to succeed. *Quilloin*, 673 F.3d at 230.

### 1. The arbitration agreement is not substantively unconscionable.

Hoffman argues that the Employment is substantively unconscionable because: (1) "it required the employee to pay excessive unknown costs for arbitration;" (2) "it prohibited the employee from recovering attorneys' fees or other costs, but also charging the Plaintiff with the expense of the attorneys' fees;" (3) "it restricted the arbitrator's award to money damages only, forbidding the arbitrator from awarding punitive damages, statutory penalties, or equitable remedies;" and (4) "it prohibited the employee from arbitrating any State, Federal and Constitutional, NLRB, FMLA etc. claims." (Doc. 37, at 10-11).

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris*, 183 F.3d at 181. The U.S. Supreme Court has rejected the broad assertion that arbitral panels are inherently favorable to one side, thereby invalidating the argument that a contract requiring arbitration is, on its own, substantively unconscionable. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) ("declin[ing] to indulge the presumption that the parties and the arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.") (cleaned up). The U.S. Supreme Court has further clarified that this principle applies even though it limits employees' rights, holding that mandatory arbitration that takes away employees' access to courts and attendant procedural protections is not inherently problematic. *See* *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120-21 (2001). So in the absence of specific additional facts suggesting unconscionability or other grounds for invalidation, an arbitration agreement, even in an employment contract, must be enforced. *Circuit City Stores*, 532 U.S. at 120-21; *Edwards v. Hovensa, LLC*, 497 F.3d 355, 363 (3d Cir. 2007). That is true even if the agreement goes so far as to specify an individual arbitrator or the rules that will govern the arbitration. *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018) (noting that the U.S. Supreme Court has "often observed that the Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted") (emphasis in original) (cleaned up).

First, the arbitration agreement is not substantively unconscionable as it does not require Hoffman to pay excessive fees. Rather, the Employment Agreement, by incorporating the JAMS Rules, provides that Genpact will pay all of the arbitration fees, less the initial case

management fee. (Doc. 35-5, at 27); *see* JAMS Rule 31(c) (providing that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee."); *see also* JAMS, Arbitration Schedule of Fees and Costs, *available at* https://www.jamsadr.com/arbitration-fees, last accessed July 13, 2022. Furthermore, the Employment Agreement states that fees will be divided evenly "to the extent allowed under the applicable law," and that Hoffman "shall only pay so much of the filing fees as [she] would have instead paid had [she] filed a complaint in a court of law." (Doc. 35-5, at 27). The JAMS Rules provide that Hoffman may only be required to pay the initial JAMS Case Management Fee, which is $400 compared to the $402 filing fee to initiate a civil action in this Court, with Genpact paying all remaining fees. *See* JAMS Rule 31(c). These provisions do not make "the arbitral form prohibitively expensive" for Hoffman. *See Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, No. 1:15-CV-00174, 2016 WL 1271333, at *5-6 (M.D. Pa. Mar. 31, 2016) (holding that the $250 fee required by plaintiff was "the approximate cost of filing a court action" and not unconscionable).

Second, Genpact and Hoffman dispute whether the arbitration agreement is unconscionable regarding the recovery of attorneys' fees. "Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Quillion*, 673 F.3d at 230-231 (collecting cases); *see Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3d Cir. 2010) (cleaned up). This generalization is only applicable when the provision requires the litigant to bear legal fees and costs regardless of the outcome of the arbitration and disallows fee-shifting. *See Quillion*, 673 F.3d at 231; *Alexander v. Anthony Int'l,*

*L.P.,* 341 F.3d 256, (3d Cir. 2003) (fee provision substantively unconscionable under Virgin Islands law where the agreement substantially limited the available remedies to plaintiffs)*;* *Spinetti v. Serv. Corp. Intern.*, 324 F.3d 212, 214-15 (3d Cir. 2003) (addressing a provision that required the litigant to bear costs regardless of the outcome of arbitration). If the agreement is ambiguous with respect to the arbitrator's ability to fashion an appropriate award, this ambiguity must be addressed by the arbitrator in the first instance. *See Quillion*, 673 F.3d at 231. In *Quillion*, the Third Circuit found an ambiguity with respect to the employee's ability to obtain fees as a remedy where explicit provisions in the parties' agreement contradicted each other as to the availability or non-availability of fees and costs. *Quillion*, 673 F.3d at 231.

> Here, in relevant part, the arbitration provision provides:

> I also agree that the arbitrator shall have the power to award any remedies available under applicable law, and that the arbitrator may award attorneys' fees and costs to the prevailing party . . . . I understand that to the extent allowed under applicable law, the company and I will evenly divide any and all costs for any administrative or hearing fees charged by the arbitrator or JAMS except that I shall pay any filing fees associated with any arbitration that I initiate, but only so much of the filing fees as I would have instead paid had I filed a complaint in a court of law.

> (Doc. 35-5, at 27).

The Court finds that the arbitration agreement is ambiguous regarding the award of attorneys' fees because one provision provides that Hoffman will bear her own legal costs and another provision provides that the arbitrator may award attorneys' fees to the extent allowed under applicable law. However, the Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator. *PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 406-07 (2003). The Court explained that "we should not, on the basis of mere speculation that an arbitrator might interpret . . . ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the

antecedent question of how the ambiguity is to be resolved." *PacifiCare,* 538 U.S. at 406-07 (citation and internal quotation marks omitted); *see also Alabama State Fed'n of Labor v. McAdory,* 325 U.S. 450, 461 (1945) ("It has long been [our] considered practice not to decide abstract, hypothetical or contingent questions . . . ."). Rather than speculate as to whether a certain interpretation of an ambiguity might render an arbitration agreement unenforceable, "the proper course [in such a case] is to compel arbitration." *PacifiCare,* 538 U.S. at 406-07. Accordingly, the Court finds that compelling arbitration is appropriate.

Finally, the Third Circuit has held that an arbitration agreement is not substantively unconscionable, even if it requires an employee to submit all of his claims to arbitration, if the agreement "does not alter or limit the rights and remedies available to that party in the arbitral forum." *Edwards,* 497 F.3d at 364 (applying *Gilmer,* 500 U.S. 20). Nothing in this agreement to arbitrate limits or alters the rights available to Hoffman in an arbitral forum, and contrary to Hoffman's assertion, the arbitration provision expressly provides that an arbitrator may award any remedies available under applicable law. (Doc. 35-5, at 27). Moreover, the arbitration agreement applies with equal force to both Genpact and Hoffman.

The Supreme Court has rejected the sort of "generalized attacks on arbitration" that "rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *Gilmer,* 500 U.S. at 30 (cleaned up). This includes speculation "that arbitration panels will be biased[,]" or concerns about matters such as the "more limited" discovery available in arbitration, the lack of "written opinions" accompanying arbitration decisions, and "[m]ere inequality in bargaining power" between parties. *Gilmer,* 500 U.S. at 30-33. Here, Hoffman offers only the general concern that the arbitration provision prohibits her "from arbitrating any State, Federal and Constitutional,

NLRB, FMLA etc. claims." (Doc. 37, at 11). However, the arbitration agreement appears to establish a fair arbitration process that applies equally to Genpact and Hoffman, and does not impose undue costs or burdens on Hoffman, the complaining former employee. The provision expressly provides: "nothing in this agreement constitutes a waiver of any rights [Hoffman] may have under applicable law." (Doc. 35-5, at 27). In addition, the arbitrator is directed to "apply applicable law" and is empowered to issue a binding award of any remedies and attorneys' fees available under applicable law. (Doc. 35-5, at 27).

The Court finds that this is a fair arbitration provision. In any event, Hoffman has failed to cite or identify any of the "series of provisions" that she believes unduly favor Genpact. If such provisions do exist, it was her burden to direct them to the Court's attention and explain why they are unconscionable. *See DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for DeShields's claim existed in the record, it was incumbent upon her to direct the District Court's attention to those facts."); *Bernard v. Webb-McRae, et al.*, No. 17-7030, 2020 WL 1329934, at *2 (D.N.J. Mar. 23, 2020) ("It is not the Court's responsibility to sift through the record in order to make Plaintiff's arguments for him.") (citation omitted).

Accordingly, the Court finds that the purported arbitration agreement is not substantively unconscionable because it does not favor either party, hinder either party's substantive rights, or limit remedies unfairly. The Court finds that there is no genuine dispute of material fact regarding substantive unconscionability.

### 2.   The arbitration agreement is not procedurally unconscionable.

Even if Hoffman had raised a genuine dispute of material fact as to substantive unconscionability, the Court nonetheless finds that Hoffman did not raise a genuine dispute

of material fact as to whether the arbitration agreement was procedurally unconscionable. Hoffman argues that procedural unconscionability arises because the agreement (1) "was imposed as a 'take it or leave it' proposition at the time of hiring without offering the employee any opportunity to negotiate any of its terms;" (2) "was a complex, 15 page document 'riddled with complex legal terminology for 4 different types of legal arguments which require different types of state & federal law/s that apply;" (3) "there is a *huge* amount of 'in-equality of bargaining power throughout the *entire arbitration agreement*;" and (4) "failed to state what arbitration rules would apply to the proceeding has a misleading confusing link to another area which was also not able to be printed out for review." (Doc. 37, at 7-9) (emphasis in original). Genpact asserts that Hoffman's claims are patently false.

The Third Circuit has explained procedural unconscionability as follows:

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris*, 183 F.3d at 181 (citing E. Allan Farnsworth, Contracts § 4.28 (2d ed. 1990)). This element is generally satisfied if the agreement constitutes a contract of adhesion. A contract of adhesion " 'is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis.' "

A contract, however, is "not unconscionable merely because the parties to it are unequal in bargaining position." Restatement (Second) of Contracts, *supra*, § 208 cmt. d; *see also, e.g.,* *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Great Western Mortgage Corp.* [*v. Peacock*], 110 F.3d [222, 229 (3d Cir. 1997)]; *Pritzker*, 7 F.3d at 1118. An adhesion contract is not necessarily unenforceable. *See, e.g.,* *Seus* [*v. John Nuveen & Co., Inc.*, 146 F.3d 175, 184 (3d Cir. 1998)].

*Alexander*, 341 F.3d at 265 (citations omitted).

In evaluating procedural unconscionability, courts consider "the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party." *Quilloin*, 673 F.3d at

235 (quoting *Salley*, 925 A.2d at 125) (cleaned up).

Here, Genpact offered Hoffman the arbitration agreement on a "take-it-or-leave-it" basis. Genpact asserts that Hoffman was given the opportunity to ask questions about the Employment Agreement during the onboarding process, and that she did indeed ask questions about the assignment of inventions provision, but did not ask about the arbitration provisions. (Doc. 35, at 23-24). In an affidavit signed by Joseph Fernandez, the previous Management Trainee at Genpact, Fernandez attested that "[n]ew hires were allowed to take breaks as needed and were not forced to stay in the conference room until they finished the onboarding documents;" "new hires could print documents from SilkRoad at home by logging in to their account with the instructions provided in the initial email sent to them;" "I did not give new hires a time limit to complete the onboarding documents;" and "[a]t no point did Ms. Hoffman ask me for additional time to complete any onboarding document." (Doc. 35-2, at 2-6). However, the arbitration agreement provides that it is a condition of employment with Genpact to arbitrate all employment-related disputes. (Doc. 35-5, at 26). Further, the Employment Agreement does not provide that employees may negotiate or modify the provisions contained therein unless such modification is "in a writing signed by the CEO or CFO of [Genpact] and [Hoffman]." (Doc. 35-5, at 29); *see* (Doc. 35-5, at 19). Yet, "[t]he fact that [an employer] essentially made the terms of the application a precondition to employment does not rise to the level of procedural unconscionability." *Noye v. Johnson & Johnson*, No. 1:15-CV-2382, 2017 WL 5135191, at *8 n.9 (M.D. Pa. Nov. 6, 2017) (quoting *Sams v. Common Ground*, No. 329600, 2017 WL 430233, at *3 (Mich. Ct. App. Jan. 31, 2017)).

The parties' relative bargaining position or "economic strength" lends little support to Hoffman's unconscionability argument. Admittedly, Genpact is represented to be a "global

professional services firm." (Doc. 36, at 1). However, as of October 8, 2018, Hoffman was fired by Genpact to work full-time as a "payroll specialist," which is a "back office operations position." (Doc. 1, ¶ 20). Hoffman avers that she has "13 years experience in back office banking operations at a bank," and "previously worked in the capacity of setup, training and processing of corporate payroll clients." (Doc. 1, ¶ 20). Thus, the Court is unpersuaded that Hoffman "lack[ed] a meaningful choice" at the time she signed the arbitration agreement as she had significant employment experience and was qualified to search for positions elsewhere. *See Quilloin*, 673 at 237.

Nonetheless, to the extent that any disparity in bargaining power or economic strength exists, the Court notes that the arbitration agreement is only three pages, is titled in large font-size "ARBITRATION AND EQUITABLE RELIEF," and states in bold typeface: "I agree to arbitrate any and all common law and/or statutory claims under local, state, or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the [ADA], . . . the [FMLA], . . . and claims of harassment, discrimination, wrongful termination, and breach of contract, except as prohibited by law." (Doc. 35-5, at 26-27). Finally, as to the "degree of economic compulsion" or "alternative sources of supply," Hoffman has not demonstrated that she lacked alternatives or faced a "degree of economic compulsion" when she signed the arbitration agreement. *Quilloin*, 673 F.3d at 235-36. Thus, the Court finds that Hoffman has not adequately demonstrated that the arbitration agreement is procedurally unconscionable.

Accordingly, having determined that the arbitration agreement is neither unconscionable, the Court finds that there is no genuine dispute that a valid arbitration agreement exists between Hoffman and Genpact. *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220

(3d Cir. 2014). The Court turns next to whether Hoffman's claims against Genpact fall within the scope of the arbitration agreement.

###### C. HOFFMAN'S CLAIMS AGAINST GENPACT ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

To determine whether Hoffman's claims fall within the scope of the arbitration agreement, the Court shall apply ordinary principles of contract interpretation. *See Russell v. Chesapeake Appalachia, L.L.C.*, No. 4:14-CV-00148, 2014 WL 6634892, at *6 (M.D. Pa. Nov. 21, 2014) ("Because arbitration is strictly a matter of contract, arbitration agreements are subject to the principles of contract interpretation."). "The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself." *Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 123 (Pa. 2011) (cleaned up). In Pennsylvania, "in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect." *Lesko*, 15 A.3d at 123 (cleaned up). This means that courts should "not interpret one provision of a contract in a manner which results in another portion being annulled." *Lesko*, 15 A.3d 123 (cleaned up); *see also Lawson v. City of Philadelphia*, No. 18-CV-1912, 2019 WL 934976, at *6 (E.D. Pa. Feb. 25, 2019) ("As a general principle, a contract should be read as a whole and no provision should be interpreted to be meaningless."); *Comm'cns Workers of Am., AFL-CIO v. Verizon Servs. Corp., Dist. 13*, No. 10-CV-6840, 2011 WL 3438193, at *4 (E.D. Pa. Aug. 5, 2011) ("Plaintiff's interpretation of these two sections of the agreement would put them at odds with one another, and render the bargaining agreement meaningless. However, in making a determination concerning the clarity or ambiguity of a contract term, the Court should avoid interpreting contractual language in a way that renders any term of the contract meaningless or superfluous. In order to avoid applying a meaning that would render a portion

of the contract superfluous, the Court finds that each of the two aforementioned quotations deal with separate issues.").

Hoffman does not respond to the scope of arbitration requirement and fails to make any argument her employment discrimination and retaliation claims are outside the scope of the arbitration agreement. As noted *supra*, under the arbitration agreement, Hoffman and Genpact agreed to "arbitrate any and all common law and/or statutory claims . . . including, but not limited to, claims under [Title VII], the [ADA] . . . the [FMLA], . . . and claims of harassment, discrimination, [and] wrongful termination . . . ." (Doc. 35-5, at 26-27). Therefore, based on the clear language of the arbitration agreement, there is no dispute of material fact that Hoffman's claims under Title VII, the ADA, the FMLA, and the PHRA for harassment, discrimination, and wrongful termination related to her employment with Genpact and fall within the scope of the arbitration agreement. (Doc. 1); *Asberry-Jones*, 2019 WL 2077731, at *5 (finding that plaintiff did not respond to scope of arbitration requirements and language of arbitration agreement "clearly and unambiguously requires arbitration" of all her claims).

Accordingly, Genpact's motion (Doc. 34) shall be **GRANTED**, and this action shall be referred to arbitration in accordance with the relevant provisions of the Employment Agreement.

D. THIS MATTER SHALL BE STAYED.

Having concluded that Hoffman's claims are subject to arbitration, the Court considers whether to stay this action pending the completion of arbitration. If a court determines that an issue in a case or proceeding is referable to arbitration it must, upon application of one of the parties, stay the proceedings until the conclusion of the arbitration. 9 U.S.C. § 3; *see also*

*Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181-82 (3d Cir. 2010); *Lloyd v. HOVENSA, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004). District courts in the Third Circuit have no discretion in deciding whether to stay or dismiss the proceedings upon determining that any of the claims or issues are referable to arbitration. If one of the parties applies for a stay, a stay must be granted. *Lloyd,* 369 F.3d at 269. Here, Genpact moves to stay proceedings in the present action pending the completion of the arbitration. (Doc. 35, at 27). Accordingly, the Court shall stay this matter pending the completion of the arbitration.

IV.   **CONCLUSION**

For the foregoing reasons, Genpact's motion to compel arbitration (Doc. 34) is **GRANTED**. The Court shall stay this matter pending the completion of the arbitration.[4]

An appropriate Order follows.

BY THE COURT:

Dated: September 12, 2022            *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**

---

[4] As this matter is stayed pending the completion of arbitration in this matter, Hoffman's remaining motions (Doc. 43; Doc. 46; Doc. 48) are **DENIED** as moot, without prejudice to Hoffman revisiting these motions upon completion of arbitration in this matter.